IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

FLATSPIKES, LLC                         :

                                        :

    v.                                  :   Civil Action No. DKC 12-1539

                                        :

SOFTSPIKES, LLC, and PRIDE
MANUFACTURING CO., LLC          :

**MEMORANDUM OPINION**

The question presented in this breach of contract case is whether there is federal subject matter jurisdiction. The parties have filed memoranda, ECF Nos. 21, 23, 24, the issues have been fully briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, the case will be dismissed for lack of subject matter jurisdiction.

**I.   Background**

**A.   Factual Background**

Plaintiff is an inventor of golf shoe technology. Specifically, it holds a number of patents on non-metal golf shoe cleats. (ECF No. 21-1, at 2). On October 7, 1999, Plaintiff entered into an "Asset Purchase Agreement" ("APA") with Defendants, designers and manufacturers of non-metal golf shoe cleats and systems to attach the cleats to golf shoes. (*Id.*). Under the APA, Plaintiff sold Defendants its rights to certain golf cleat patents and products in exchange for a cash

payment, periodic royalty payments on the sale of patented "Dynamic Cleats,"[1] and an advance on royalty payments. (*Id.* at 2-6).   From 1999 through 2008, Defendants paid Plaintiff royalties on two of their products, the Black Widow cleat and the Pulsar cleat ("BW Cleats"). (ECF No. 23, at 2).

The APA includes an "Offset Provision" that allows Defendants to offset legal expenses of litigation commenced by third parties against Defendants claiming that the "Property" purchased pursuant to the APA infringes the third party's patent rights against royalties earned by Plaintiff under the contract:

> In the event any third party commences litigation against Buyer [Defendants] alleging that the sale or license by Buyer of Products covered by Property infringes the patent rights of such third party, Buyer shall pay such out-of-pocket expenses, up to an aggregate amount of Fifty Thousand Dollars ($50,000), incurred by Buyer in Defending any such suits.

(*Id.* at 6).   After the first $50,000, the APA provides that litigation expenses will be split evenly by Plaintiff and Defendants, and Defendants are to offset Plaintiff's portion of the expenses against future royalty payments.   (*Id.*). "Products" are defined as all "uses of and products based on the

---

[1] The APA defines a "Dynamic Cleat" as "any removable sport shoe cleat which provides traction through moveable cleat elements and which is covered by any patent or patent application included in the Property [as defined in the APA] or to which Buyer or any of its existing or future Affiliates has or subsequently obtains ownership." (ECF No 21-1, at 2).

Property." (*Id.* at 2). "The Property" is defined as "the patents and patent applications set forth in" the APA, and, among other things, "all works derived from" the patents. (*Id.* at 1).

In 2007, a third party, Greenskeepers, Inc., sued Defendants, alleging that the BW Cleats infringed one of its patents. (ECF No. 1 ¶ 12). On December 16, 2008, Defendants told Plaintiff that they were suspending royalty payments to offset litigation costs incurred in defending the Greenskeepers lawsuit. (*Id.* ¶ 13). Defendants claimed and offset litigation expenses of approximately $2,500,000 for this suit. (*Id.* ¶ 14). In July 2008, separately and apart from the Greenskeepers litigation, Defendant Softspikes sued another third party, MacNeill Engineering Co., for its infringement of Plaintiff's patents, to which Defendants had rights under the APA. In September of that year, MacNeill filed a counterclaim against Softspikes alleging that its sale of BW Cleats infringed MacNeill's patents. (*Id.* ¶ 16). This litigation settled, and Plaintiff asserts that the settlement included cross-licenses covering past sales and continued manufacturing of each company's property, including cleats for which Plaintiff is owed royalties. (*Id.* ¶ 17). Softspikes suspended royalty payments to Plaintiff and offset its $1,000,000 in litigation expenses for defense of MacNeill's counterclaim against royalty payments

already due. (*Id.* ¶ 18-19). Finally, Plaintiff alleges that Softspikes received approximately $1,000,000 worth of license fees from MacNeill between 2000-2004 for products it avers qualify as "Dynamic Cleats" under the APA, and for which Plaintiff is entitled royalty payments. (*Id.* ¶ 20).

**B.   Procedural Background**

On December 14, 2011, Plaintiff filed a complaint against Defendants alleging breach of contract in the Circuit Court for Montgomery County, Maryland. (ECF No. 23, at 3). In their answer to this complaint, Defendants argued that the state court lacked subject matter jurisdiction because federal courts have exclusive jurisdiction in cases arising under federal patent laws. (ECF No. 21, at 1). After the circuit court decided that patent issues were likely implicated by the complaint, that lawsuit was stayed until Plaintiff filed a complaint with this court. (*Id.*). That case remains stayed pending this determination of federal subject matter jurisdiction.

On May 22, 2012, Plaintiff filed a complaint comprised of two counts for breach of contract. (ECF No. 1). On July 2, 2012, Defendants filed an answer to the complaint asserting a number of affirmative defenses and counterclaims for breach of contract and unjust enrichment. (ECF No. 9). Plaintiff subsequently filed an answer to the counterclaims. (ECF No. 22). After a conference with the parties, and given the unusual

posture of this case, briefing on federal subject matter jurisdiction was ordered. (ECF No. 20). Despite filing suit here, Plaintiff contends that this court lacks subject matter jurisdiction, while Defendants assert that it has it.

## II.  Standard of Review

Under 28 U.S.C. § 1338(a), "[t]he district courts . . . have original jurisdiction of any civil action arising under any Act of Congress relating to patents." Further, "no State court shall have jurisdiction over any claim for relief arising under any act of Congress relating to patents . . ." *Id.*

It is axiomatic that lawsuits "arise under the law that creates the cause of action." *Am. Well Works Co. v. Layne & Bowler Co.*, 241 U.S. 257, 260 (1916); *Merrell Dow Pharm., Inc. v. Thompson*, 478 U.S. 804, 808 (1986). Even if the cause of action does not arise from patent law, the jurisdictional inquiry does not necessarily end. "[A] case [also] may arise under federal law 'where the vindication of a right under state law necessarily turn[s] on some construction of federal law.'" *Merrell Dow*, 478 U.S. at 808 (quoting *Franchise Tax Bd. v. Const. Laborers Vacation Trust*, 463 U.S. 1, 9 (1983)). Furthermore,

> the question is, does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved

> balance of federal and state judicial
> responsibilities.

*Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg.,*
545 U.S. 308, 314 (2005).  Federal patent law jurisdiction,
therefore

> extends only to those cases in which a well-
> pleaded complaint establishes either that
> federal patent law creates the cause of
> action or that the plaintiff's right to
> relief necessarily depends on resolution of
> a substantial question of federal patent
> law, in that patent law is a necessary
> element of one of the well-pleaded claims.

*Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 801
(1988).  Therefore, to establish federal jurisdiction when state
law creates the plaintiff's causes of action, a party must show
"two things:  (1) that the plaintiff's right to relief
necessarily depends on a question of federal law, and (2) that
the question of federal law is substantial."  *Dixon v. Coburg
Dairy, Inc.*, 369 F.3d 811, 816 (4th Cir. 2004) (en banc).[2]

A plaintiff's state law claim necessarily relies on federal
law only if *every* theory supporting that claim requires the
federal issue to be resolved.  *Christianson*, 486 U.S. at 811
("The well-pleaded complaint rule . . . focuses on claims, not
theories, . . . and just because an element that is essential to

---

[2]  The Supreme Court again has a case involving the
application of the test for federal jurisdiction in the legal
malpractice context, *Gunn v. Minton*, No. 11-1118, to be argued
January 16, 2013.

a particular theory might be governed by federal patent law does not mean that the entire claim . . . 'arises under' patent law.").[3]  Put differently, if each claim supports at least one theory of recovery based on state law, the federal courts do not have jurisdiction.  *Id.* at 810 (holding that "a claim supported by alternative theories in the complaint may not form the basis for § 1338(a) [patent] jurisdiction unless patent law is essential to each of those theories"); *see also In re Tamoxifen Citrate Antitrust Litig.*, 466 F.3d 187, 199 (2[d] Cir. 2006) (concluding that "even if one theory supporting a claim essentially turns on an issue arising under patent law, as long as there is at least one alternative theory supporting the claim that does not rely on patent law, there is no 'arising under' jurisdiction under 28 U.S.C. § 1338"); *Dixon*, 369 F.3d at 817 ("if the plaintiff can support his claim with even one theory that does not call for an interpretation of federal law, his claim does not 'arise under' federal law"); *Mulcahey*, 29 F.3d at 153 ("[I]f a claim is supported not only by a theory

_____

[3]  Importantly, as Defendants note, *Christianson* does not support the proposition that "all the claims must independently present a sufficiently substantial federal question to support federal jurisdiction." *Danfelt v. Bd. Of Cnty. Com'rs of Washington Cnty.*, 998 F.Supp. 606, 610 n. 1 (D.Md. 1998) (holding that alternate state law claims that offer identical relief to the plaintiff's federal law claims do not support federal jurisdiction).  Such a conclusion would undermine the doctrine of supplemental jurisdiction codified in 28 U.S.C. § 1367. *See id.*

establishing federal subject matter jurisdiction but also by an alternative theory which would not establish such jurisdiction, then federal subject matter jurisdiction does not exist."); *Greer v. Crown Title Corp.*, 216 F.Supp.2d 519, 522 (D.Md. 2002) ("[I]f a state law claim is supported by alternative theories of recovery, only one of which sustains federal jurisdiction, then federal jurisdiction does not exist.") (citing *Christianson*, 486 U.S. 800). Finally, jurisdiction may only be based on the claims as pled in the complaint; an anticipated defense or a defendant's counterclaim cannot serve as the basis for a district court's "arising under" jurisdiction, even if the parties admit that the patent-based defense or counterclaim is the only question actually at issue in the case. *See Holmes Grp. v. Vornado Air Circulation Sys., Inc.*, 535 U.S. 826, 830 (2002); *Christianson*, 486 U.S. at 809.

## III. Analysis

Plaintiff asserts that there is no federal jurisdiction because its claims arise out of its state law contract rights. Plaintiff's two breach of contract counts alleging that Defendants breached the APA were created by Maryland law, not federal law. Defendants argue that the contracts may only be interpreted after the patents are construed, providing a basis for exclusive federal jurisdiction.

If Plaintiff is correct, there is no federal question presented. *See Neal v. Wells Fargo Home Mortg., Inc.*, 168 Md.App. 747, 756 (2006) (concluding that "a contract interpretation issue . . . is 'a question of state law'") (quoting *Wells v. Chevy Chase Bank, F.S.B.*, 377 Md. 197, 229 (2003)). *See Holmes*, 535 U.S. at 829; *Christianson*, 486 U.S. 807; *see also DuVal Wiedmann, L.L.C. v. Inforocket.com, Inc.*, 374 F.App'x 482, 484 (5th Cir. 2010) ("It is well settled that if the patentee pleads a cause of action based on rights created by a contract . . . the case is not one 'arising under' the patent laws.") (quoting *Jim Arnold Corp. v. Hydrotech Sys. Inc.*, 109 F.3d 1567, 1572 (Fed. Cir. 1997)); *Scheiber v. Dolby Labs., Inc.*, 293 F.3d 1014, 1016 (7th Cir. 2002) (Posner, J.) (concluding that "a suit to enforce a patent licensing agreement does not arise under federal patent law [and t]he presence of a federal defense . . . is irrelevant to jurisdiction."). Unfortunately, however, "[t]he line between cases that 'arise under' patent and copyright laws, as contemplated by 28 U.S.C. § 1338(a), and those that present only state law contract issues is a 'very subtle one,' and the question leads down 'one of the darkest corridors of the law of federal courts and federal jurisdiction.'" *Arthur Young & Co. v. City of Richmond*, 895 F.2d 967, 969 n. 2 (4th Cir. 1990) (internal citations omitted).

In Count I, Plaintiff asserts that Defendants breached the APA by improperly offsetting expenses that Softspikes incurred defending the Greenskeepers and MacNeill litigations against royalties due to Plaintiff. (ECF No. 1 ¶¶ 22-30). Count I is construed to have two claims. By alleging that it has a contractually established right to money from Defendants for two instances of litigation-expense offsetting, Plaintiff alleges a separate breach of contract claim for each lawsuit. In Count II, Plaintiff asserts three claims, contending that Defendants breached the APA by: (1) underreporting royalties due to Plaintiff on the sale of Dynamic Cleats; (2) failing to pay royalties in connection with money Softspikes received from MacNeill for licenses of cleats; and (3) failing to pay royalties in connection with licenses Softspikes received from MacNeill pursuant to the settlement of their litigation.

Defendants argue that in order for Plaintiff to establish breach of contract on both counts, substantial questions of federal patent law would need to be resolved. With respect to the offset claims in Count I, Defendants argue that Plaintiff would have to show that the cleats at issue either infringe or are covered by the U.S. patents covered by the APA, because the offset provision requires Plaintiff to share litigation costs only if a third party alleges that the "Products covered by Property" infringe the patent rights of the third party. (ECF

No. 21, at 3). With respect to the royalties claims asserted in Count II, they argue that royalties are owed only on cleats covered by patents contemplated by the APA. In Defendants' view, both of these counts therefore necessitate a determination of the scope of the patents included under the APA's definition of "Property." (*Id.*) Indeed, this may be one basis upon which Plaintiff could base its breach of contract arguments, but it is not the only basis.

In support of their assertion, Defendants point to Federal Circuit precedent in which the issues in a breach of contract suit presented substantial questions of patent law. *See U.S. Valves v. Dray*, 212 F.3d 1368, 1372 (Fed. Cir. 2000) (holding that to prevail on its breach of contract claim, the contract terms required that the plaintiff demonstrate defendant's products infringed its patents, and patent law was therefore a necessary element of plaintiff's breach of contract action). The mere presence of a possible question about patents, however, does not convert the state law breach of contract action into one arising under the patent laws. *Consol. World Housewares, Inc. v. Finkle*, 831 F.2d 261, 265 (Fed. Cir. 1987) ("That a contract action may involve a determination of the true inventor does not convert that action into one 'arising under' the patent laws."). In this instance, Defendants' reliance on *U.S. Valves* is misplaced. In that case, Dray, the patentee, entered into a

contract with U.S. Valves to provide that company the exclusive right to manufacture, use, sell, advertise, and distribute the patented invention.   212 F.3d at 1370.   After the parties' relationship broke down, U.S. Valves sued Dray for breach of contract because he manufactured and sold new products allegedly covered by the license agreement.   *Id.* at 1371.   The *only* way for U.S. Valves to demonstrate that the contract was breached was to show that Dray's new products infringed the patents.   *Id.* at 1372.

"Although the court in *U.S. Valves* found that the breach of contract action at issue required a determination as to whether the defendant's actions infringed the subject patent, the case does not stand for the proposition that all breach of contract actions involving patents require such a determination."   *Bd. of Regents, Univ. of Tx. Sys. v. Nippon Tel. & Tel. Corp.*, 414 F.3d 1358, 1363-64 (Fed. Cir. 2005); *see also Burlington Indus., Inc. v. Solutia, Inc.*, 310 F.App'x 594 (4th Cir. 2009) (per curiam) (holding that complaint asserted claims based on breach of license agreement rather than infringement of plaintiff's patents, and therefore do not 'arise under' federal patent law); *Uroplasty, Inc. v. Advanced Uroscience, Inc.*, 239 F.3d 1277, 1280 (Fed. Cir. 2001) (vacating district court's finding of subject matter jurisdiction on the grounds that although the cited patent "may be evidence in support of Uroplasty's

allegations . . . the mere presence of the patent does not create a substantial issue of patent law"); *Jim Arnold Corp.* 109 F.3d at 1574 (holding that the plaintiff's complaint alleging breach of a patent assignment and royalty contract does not state a claim arising under federal patent law even though a foreseeable consequence of finding a breach of contract may lead to allegations of patent infringement); *Speedco, Inc. v. Estes*, 853 F.2d 909, 913 (Fed. Cir. 1988) (holding that "the fact that patent issues are relevant under state contract law to the resolution of a contract dispute cannot possibly convert a suit for breach of contract into one 'arising under' the patent laws as required to render the jurisdiction of the district court based on section 1338") (internal citations omitted); *Consol. World Housewares*, 831 F.2d at 265 ("the mere presence of a patent issue cannot of itself create a cause of action arising under the patent laws"); *Ballard Med. Prod. v. Wright*, 823 F.2d 527, 531 (Fed. Cir. 1987) ("That patent validity or infringement issues may have been injected . . . in a contract suit forms no basis for asserting that the district court's jurisdiction was based on § 1338 and hence forms no basis for asserting jurisdiction in this court."). Rather, *U.S. Valves* demonstrates that federal jurisdiction is proper when the only way that a breach of a licensing agreement can be demonstrated is to

interpret the patents and determine whether the product in question infringes those patents.

### 1.   Claims for Offset of Litigation Expenses

To support its first breach of contract claim in Count I, (i.e. that Defendants improperly offset litigation expenses to defend the Greenskeepers lawsuit), Plaintiff offers two theories to support relief:  first, that Defendants overstated its litigation expenses; second, that the cleats at issue are not covered by the APA.  To support its second claim, (i.e. that Defendants improperly offset litigation expenses to defend the MacNeill litigation), Plaintiff offers three theories in favor of relief: first, that the procedural posture of the lawsuit precludes an offset; second, that Defendants overstated their expenses; and third, that the cleats at issue are not covered by the APA.

### a.   Plaintiff's Theory that Cleats are not Covered by Language of APA

For both claims asserted in Count I, Plaintiff alleges, as a non-patent related ground for relief, that the language of the APA put the cleats at issue outside the scope of the APA's offset provision.  The offset provision provides that Defendants may offset litigation expenses if the suit alleges that Defendants' "sale or license . . . of Products covered by Property infringes the patent rights of such third party." (ECF No. 21-1, at 6).  The contract defines that "Products" as all

14

"uses of and products based on the Property." (*Id.* at 2).  "The Property" is defined as "the patents and patent applications set forth in" the APA, and, among other things, "all works derived from" the patents. (*Id.* at 1).

Plaintiff contends that the allegedly infringing cleats at issue in the Greenskeepers and MacNeill lawsuits fall outside of the offset provision because they are not "Products," despite conceding that the cleats are "covered by Property." (ECF No. 23, at 10).  Plaintiff contends that an example of a "use of the Property" would be a third party being granted a license by Defendants to manufacture the cleats, which would entail "using" the licensed intellectual property to cast dies and taking other steps necessary to produce cleats.  Under this understanding of the APA's terms, the cleats are merely "goods," they are not a "use of the property."

Defendants argue that this is a distinction without a difference.  Indeed, it is hard to imagine a "use" of the patents in this context that does not result in a "good" being produced.  Indeed, likely the only basis upon which one of these patents could be infringed is by a third party producing a cleat that results directly from the "use" of the patent.

Plaintiff, however, also asserts a second argument to support its theory that the BW Cleats are not covered by the APA:  they are not "Products" because they were not "based on

the Property."   In support of this argument, they note that the BW Cleats were designed by Softspikes in 1997, "well before Softspikes purchased the Flatspikes Property," in October 1999. (ECF No. 23, at 11).   Because they were designed well before Flatspikes licensed its patents to Softspikes, Plaintiff's argument goes, the BW Cleats could not have been "based on the Property," and therefore they fall outside of the language of the APA.   Demonstrating that the BW Cleats were designed two years before the APA was signed could establish that Defendants improperly offset their litigation expenses without the need to construe patent law.   Therefore, Plaintiff could establish each claim under Count I without a determination of patent law.   As a result, those claims do not establish federal jurisdiction under § 1338.

### b.   Plaintiff's Theory that Defendants Overstated Litigation Expenses

The second theory that Plaintiff advances in support of both of its claims under Count I is that Defendants overstated their expenses in both lawsuits, and Plaintiff has a right to recover damages.   The resolution of this factual question does not invoke the patent laws.   Rather, it is merely a matter of the parties' performance under the contract, and is properly decided by the state court.   *Jim Arnold Corp.*, 109 F.3d at 1572. On this basis alone, Plaintiff could recover some damages for breach of contract on both claims in Count I without resort to a

16

patent determination, notwithstanding that its recovery may not be as complete under this theory as if the entire offset were deemed improper because the cleats at issue are outside of the scope of the APA's provisions.

### c.   Plaintiff's Theory that Defendants did not Commence MacNeill Litigation

Finally, with respect to its offset claim for the MacNeill litigation, Plaintiff alleges not only that Defendants overstated their actual litigation costs, but also that the procedural posture of that lawsuit precludes Defendants from offsetting the expenses under the APA.  Plaintiff avers that the offset provision applies only if "the third party commences litigation against" Defendant Softspikes.  (ECF No. 23, at 12).  Plaintiff further alleges that Defendants first sued MacNeill; by filing a counterclaim alleging patent infringement, MacNeill did not "commence litigation," as contemplated by the APA's offset provision.  The interpretation of this contract term is a question of state law.  *Neal*, 168 Md.App. at 756 (concluding that "a contract interpretation issue . . . is 'a question of state law'") (internal citations omitted).  Therefore, because Plaintiff could establish that Defendants improperly offset expenses of the MacNeill litigation based both on an interpretation of the contract's terms and an examination of Defendants' out-of-pocket expenses, this claim does not arise under the federal patent laws.

**2.  Underpayment of Royalties Claims**

Regarding Count II, Plaintiff argues that patent law is not essential to each theory supporting its breach of contract claims for underpayment of royalties.  Plaintiff alleges that Defendants either underpaid, or failed to pay royalties on three categories of transactions, comprising three separate claims: (1) Defendants' sale of "Dynamic Cleats" under the APA; (2) licenses sold to MacNeill for its sale of cleats from 2000-04; and (3) royalties received in connection with Defendants' 2008 settlement with MacNeill.

As to the first claim for royalties, Plaintiff simply alleges that Defendants under-reported the number of cleats they sold that were covered by the APA's royalties provisions. Plaintiff alleges that it will be able to establish that additional royalties are owed based on a basic accounting – by showing that Defendants sold more of the type of cleats for which they had been paying Plaintiff some amount of royalties than what they told Plaintiff they had sold.

As to the second and third claims for royalties, Plaintiff makes a similar, though somewhat more attenuated, argument. Plaintiff alleges that the cleats for which MacNeill paid Defendants royalties were covered by a licensing agreement between those two parties.  Plaintiff further advances that those cleats are covered by the patents included in the APA.

Therefore, they are owed a portion of the royalties that Defendants received from MacNeill. Plaintiff maintains that it can show the cleats are covered by the APA not by examining the patents, but by examining the license agreement and cleats themselves. In Plaintiff's view, such an examination would show whether these cleats are marked with the patent numbers covered by the APA, and whether Softspikes and MacNeill regarded them as the same cleats for which Defendants had a history of paying Plaintiff royalties.

Again, Defendants argue that proving that royalties are owed necessitates a finding that the products sold fall under the APA, and patent law is essential to such a finding. Defendants' argument is unavailing because determining whether royalties are owed on the facts Plaintiff pleads is a question of state contract law that could be determined by interpreting the licensing agreements at issue, without resort to patent law. *See, e.g., Metrologic Instruments, Inc. v. Symbol Tech., Inc.*, 254 F.App'x 128, 132 (3$^{\text{d}}$ Cir. 2007) (holding that "[t]here is no rule of law that requires a judicial finding of [patent] infringement as a prerequisite to licensing," and noting that, by arguing to the contrary, the defendant was at odds with common sense, the plain language of the licensing agreement, and defendant's prior behavior of paying royalties for years on the property at issue); *Royal v. Leading Edge Prods., Inc.*, 833 F.2d

1, 5 (2$^d$ Cir. 1987) (concluding, pre-*Christianson*,  that "suits which seek royalties or the enforcement of remedies in respect of contracts permitting the use of patents have frequently been held not to 'arise under' § 1338(a) in a jurisdictional sense.") (collecting cases).

For the first royalty claim, whether Defendants simply did not properly report all of the sales of cleats for which royalties were due (and on which they had paid royalties in prior years) is a fact-based question of contract law.  This failure to perform fully under the contract does not require a determination of patent infringement; it only requires a determination of whether transactions were properly communicated to Plaintiff, as required by the APA.  *See Metrologic*, 254 F.App'x at 132 (holding that a finding of patent infringement is not required in a breach of licensing agreement claim when a contract governs the dispute and a party has paid royalties on the property at issue for years prior to the litigation).

Additionally, for the second and third claims under Count II, a determination of whether royalties are due requires only an examination of the agreements and transactions pursuant to which Defendants received money from MacNeill.  This examination does not require a court to construe patents, but to interpret contracts and evaluate the parties' performance thereunder. Ultimately, one way of establishing that royalties are due may

be to construe patents, but this is not the only way. For example, Plaintiff alleges that the records of the transactions, the patent number imprints on the products sold, and the corresponding license agreements will reveal whether royalties are owed. This factual inquiry does not implicate substantive patent law and thus is not a basis for federal question jurisdiction. *See, e.g.*, *ExcelStor Tech. v. Papst Licensing GMBH & Co. KG*, 541 F.3d 1373, 1376-77 (Fed. Cir. 2008) (affirming district court's finding of lack of subject matter jurisdiction because the question of double-payment of royalties could be resolved by interpreting licensing contracts under state law, and did not invoke patent law as a necessary element of the claim).

## IV. Conclusion

For the foregoing reasons, plaintiff's right to relief does not necessarily depend on resolution of a substantial question of federal patent law, in that patent law is a necessary element of one of the well-pleaded claims. Accordingly, there is no basis for federal question jurisdiction, and the case will be dismissed. A separate order will follow.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge
